May it please the Court, my name is Christine Fierro, and I represent the appellant, American Guarantee & Liability Company. At its core, this case really involves two questions. The first is whether a contract can be effective as of the day of its date, even if it's executed sometime thereafter. And the second is whether or not an injury arises from work, where a man is injured walking across a work site, and that injury is compounded by his failure to wear a hard hat in violation of safety regulations. Well, whether the contract is effective as of the date it is dated or not, there's not an abstract question in this case. The question is whether the insurance policy required an insured contract to be executed prior to the date of the accident. So I would suggest you descend from that level of generality which you've suggested and talk about this case. Yes, Your Honor. All right. The Lexington policy has an additional insured provision, which states that an additional insured endorsement. Could you pull the mic closer to your mouth, please? Thank you. The Lexington policy has an additional insured endorsement that states that an additional insured is as required by written contract. That's the only verbiage in the additional insured provision. This other verbiage, insured contract and the requirement of an executed contract, comes from a different place in the policy. It comes from an exclusion in the policy that applies to contractual liability. That exclusion has no place in this discussion. This case is about insurance coverage for an entity called BBI, the general contractor on the project. But as an additional insured. As an additional insured. But BBI was accused in the underlying case of tort liability. BBI was sued for negligence, two counts of negligence by Mr. Trahan. The exclusion in the policy applies to insureds that are facing contractual liability issues. So in other words, where an insured in the underlying case has liability that is coming out of a contractual obligation, a contractual indemnity provision, the contract, the insurance policy excludes coverage and then makes an exception for insured contracts. That exclusion has nothing to do with coverage for BBI, where BBI is only facing tort liability. Kennedy. And that's because under at page 228 of the record, under exclusions, the bold-faced subindent reads contractual liability. It's an exclusion from, it's an exception to an exclusion for contractual liability, not for tort liability. That's correct. The policy itself has an insuring agreement. So what the policy is covering is bodily injury arising from an occurrence. Vandenberg and other cases have held that how that is pled, tort or contract, doesn't matter. The requirements of the insuring agreement, so in other words, the thing that triggers coverage is whether or not there's been a bodily injury and whether that arises from an accident and whether it happens within the policy period. And your position is that all that is required is that the additional insured be required by a written contract, not by an insured contract. Precisely. The two arguments here that have been made, one was made at the trial level, the other made at the appellate level, was that the contractual liability exclusion, at the trial level, Lexington asserted that the contractual liability exclusion did have some application. At the appellate level, what Lexington is now arguing is that the contractual liability exclusion somehow informs the additional insured endorsement. So if you look at the phrase, written contract, in the additional insured provision and interpret it, that you can read into it things from these other parts of the policy, including the contractual liability exclusion. American Guarantees' position is there's no reason for that. The contractual liability exclusion is what it is. It has no bearing on BDI's coverage. And there's no reason for reading it into the additional insured endorsement in any way. Written contract means written contract. In fact, the very fact that Lexington knew how to write a requirement for execution in a contractual liability exclusion suggests that if that's what they wanted in the defining additional insured to the contract. Kennedy, I'm arguing that under your theory, then a subcontractor who is not covered can cause an accident and then go and backdate the contract with his contractor so that it has an effective date before the accident and procure insurance coverage that way. That's not insurance. True. But in this case, there's no – I have two answers to that, actually. First, in this case, there's no question that the parties were actually working as that contract specified, that they had previously countersigned a letter of intent where it was clear that RCM was saying that it was going to provide additional insured coverage. There's a lot of indicia to suggest that this contract was not nefarious in any way. There was no – Kennedy, I'm arguing that under your theory, then a subcontractor who is not covered can cause an accident and then go and backdate the contract with his contractor so that it has an effective date before the accident. I'm arguing that under your theory, then a subcontractor who is not covered can cause an accident and then go and backdate the contract where it was clear that RCM was saying that it was going to provide additional insured coverage. I'm arguing that under your theory, then a subcontractor who is not covered can cause an accident and then go and backdate the contract. Again, there was no nefarious purpose. The second point I would make to that is that Lexington itself wrote its additional insured endorsement. It's the one that linked its coverage to what RCM did. So by stating just we'll make as an insured anyone who you, RCM, obligates herself to provide this coverage, they essentially hooked themselves to RCM's wagon. And so – Excuse me. Go ahead. Finish your sentence. And so when RCM executed this contract, they did bind Lexington. Assuming there's coverage, it still has to – the accident still has to arise out of the operations of the sub, right? That's right. I understand their argument is, or at least the district judge may have also ruled that this guy is just walking around and get bopped on the head by a piece of wood. It had nothing to do with putting in fire sprinklers. He's on his way to lunch. What's the answer to that? Two things. The district court actually never reached the question. Okay. Because the district court believed that the contract had to be executed, he never got further than that. With regard to that second piece, the case here is actually extremely close to the fact pattern of the seminal case Sciufi. In Sciufi, what the court held was that this phrase, arising out of, denotes really only a minimal causal connection, and no particular cause level has to be met. What we know from other cases is that it's not required that the subcontractor had to be negligent, and it is possible that the additional insured can be solely negligent, and yet AI coverage would attach. Sciufi factually is very close to this case. In that case, the subcontractor employee who was injured was working on an air conditioning unit on the roof of a building. He went to take his wife to the airport, and in leaving the roof, had to pass through a hatch. The hatch malfunctioned, and he was injured as he passed through the hatch. He sought coverage, or rather, he sued the building owner, and the building owner sought coverage under the air conditioner's policy as an AI, so in other words, his employer. And the court held that there was sufficient nexus between his work and the injury. That case seems to help you quite a bit. What about the other case, American Dynasty? American Dynasty is something of an outlier. It's the one case that has held that a rising out of was not enough in a case where a man was working on a pipe, and there was an explosion somewhere else, and he's hit by shrapnel from that explosion. But American Dynasty, at its core, it was dealing with an indemnity provision. So in the first instance, it was interpreting an indemnity provision that had a more limiting phrase. That phrase said that it had to arise out of the acts or omissions of the subcontractor, and the court found that phrase significant. In a later case, General Starr, the same judge, in writing about his previous opinion, said, American Dynasty really only indicates that you can use, you can look to a contractual indemnity provision to clear up an ambiguity in the AI provision. But General Starr found no need to do that, and they, in fact, found the same sort of minimal causation and found for coverage. There are other cases that have since followed Sayufi and similarly held a very minimal standard. In the case of Atlantic Richfield, for example, a man was carrying a piece of property, as he stepped down from a building, the step collapsed, and he was injured because the step collapsed. Again, there, the owners of the property sought coverage under, excuse me, under the his employer's policy, and again, it was found that the minimal causation standard was met. You mentioned you wanted to reserve some time, and I see you're down to four minutes. I'm down to it. Thank you, Ms. Feiglin. May I please report, Mark Bonino, appearing on behalf of Lexington Insurance on this matter. With regard, let me start with the the, I'll come back to the written contract and the question that Judge Bea asked with regard to the problems with the American Guarantee interpretation on that, because I think that is critical to the outcome of this case. But moving to the line, there are really two different kinds of additional insured endorsements, and there is a line between the two. There is not a good case and an outlier case, as was suggested just a couple of minutes ago. In fact, the additional insured endorsement interpretation cases really come out of two courts. The Acceptance and the Vinton case both came out of the first district here in San Francisco, written by Justice Pirelli, who just retired. The American Dynasty, St. Paul v. American Dynasty case, and the American Casualty v. General Starr case, were both came out of the second district in L.A., written by Justice Krosky, who is still on the bench down there. And in California, as you know, it doesn't matter what district the case has come out of. The law of California is the law. But the point is that all of those, all four of those cases, say that there is a line that controls as to whether or not the additional insured endorsement is going to apply broadly or more narrowly. In fact, Acceptance v. Sufi said that the language there just said, well, if it's arising out of the work, it's covered. But if the language instead had said arising out of the work and the operations of the insured, they said that at 328 of the Sufi case, then there would be no coverage unless there was actually something that arose out of the acts being performed. And in fact, if you look at the American Dynasty, St. Paul v. American Dynasty case, that's exactly what the policy language, the additional insured policy language provided at American Dynasty, it talked about arising out of the work of the additional insured performed for. In other words, it had the focus in that exclusionary language is on the event occurs while the subcontractor is working on the project, not just arises out of the fact that the subcontractor at some point was on the job. Where in the record would you, Mr. Bonino, point to us the particular language in this contract that you want us to? The record, it said, excerpts of record 283, Your Honor, which is the additional insured endorsement, and it is in the first part of that additional insured endorsement. And the specific language is that, excuse me. But only with respect to liability arising out of your ongoing operations performed for that insured. Yes. The cases tell us arising out of in California is a pretty broad concept. They absolutely do, Your Honor, on various contexts. Right. Here you have a guy who's on the job site during the workday going through an official authorized gate to take his authorized lunch hour. It's hard for me to see, taking it broadly, why that doesn't arise out of his work. Your Honor, under Acceptance v. Sufi, that, if it stopped there, if the endorsement stopped there, it might. But it also says performed for that insured. The worker has to be doing something for the job. I mean, he's not there for his own personal amusement. I mean, he's there to work that day. Your Honor, that's correct. And in the same way, the worker in St. Paul v. American Dynasty was not there for personal amusement. He was, in fact, feeding cable through an electrical line when, on the same job site, the General Locus, somebody was doing some pipe testing. How do you harmonize those two? Because in the American Dynasty case, the Court pointed out that this performing work for that insured meant that there had to be some causal connection. There has to be some but-for connection between the activity that causes the injury and the presence of the injured person on the site. In fact, the Court in American Dynasty and in Vinton, remember Vinton was one of the cases on the First District side, say that that's a significant distinction. It's not mere presence on the site under this language. It is instead that the injury was completely independent of the work that the subcontractor was doing. For the insured. What? Yes. Subcontractor doing it for the general contractor. For the general contractor. That's right, Your Honor. In fact, and in this case, under the facts, as the Court knows, the subcontractor was putting in fire sprinklers inside the building. The event that dropped the board, according to the declaration that's in the record at page 65, I believe, was dropped from the roof of the building where the subcontractor was not. And under the terms of the subcontractor, page 112 discusses the scope of the subcontractor's work, where the subcontractor was never going to be. The subcontractor was working inside that building. They didn't. It wasn't this injury, this accident, didn't arise out of the work that the subcontractor was performing for the owner or the general contractor. Your point, if I understand you correctly, is that if the language of the contract stopped with arising out of the work, sciufi would apply. If you take a look at the actual contract, which is arising out of work performed for the insured. Right. Then American Dynasty applies. Exactly, Your Honor. And that's, yes, I'm sorry. And that's exactly the point, and that's exactly the line. And again, it's not a line. If I was deciding acceptance, I might not decide it the same way, but I'm not on the court of appeal. The, you know, we're, but that is a line that has been acknowledged, again, not just in American Dynasty. It's acknowledged in acceptance, in the acceptance case at 328, and again in Vinton, which was written by Justice Perali again, and again concurred by Justice Corrigan, who is now on the Supreme Court. Again, they mention that same, that same particular point, that there is that distinction between these two types of policy language, and that's a line that applies here. And finally, the American Casualty v. General Starr case, which is a case that was filed by Judge Krosky after the St. Paul v. American Dynasty, did come to the conclusion that there was, the additional insured endorsement did apply in that case, but at page 1528 of that case, it goes into great detail to explain the distinction, explain that line that I was just talking about, and why that line applied on the factual basis, Judge Livingston, that you were asking about, which is the question of, well, isn't the fact that he's on the work side enough? And Justice Krosky says, no, that's not, that's not the reason. Here, there is a significant difference in American Dynasty, because the, the acts that gave rise to the injury were completely independent of the work, in essence, the subcontractor was doing. Don't forget to address the first issue. Yes, Your Honor. Back to the written contract. The, the additional insured endorsement requires a written contract. The contractual liability coverage, the exception to the exclusion, talks about a written contract executed before the injury. But for the very, number one, you have to read all the terms of the policy consistently. You can't read them in isolation. Number two, for the very reason that Judge Bea pointed out a few minutes ago, to say that, well, it doesn't matter whether the contract is written before or after the injury, as long as there's a written contract that's good enough, and a written contract doesn't have to be signed. Well, California, a written contract does have to be signed. You can have other kinds of contracts. You can have a contract implied in law. You can have promissory estoppel. You can have quantum merits. You can have implied in fact. But the policy requires a written contract. And the reason for that is because that way, the insurance company, who doesn't have the ability to become involved in the backdating of some agreement, is not held liable for something that occurred before that written contract was signed by both of the parties. So I believe that is a significant date. It's consistent with the use of the term throughout the contract. And it's also consistent with the use of a term, written contract, in California law. Whereas where the appellants pointed out, for example, the labor code, they talk about written contract that has to be executed, statute of frauds is a written contract signed by the party to be charged. Kennedy, if the parties agree to backdate a contract, then there's agreement as to that backdating, and that's part of the written contract. That is part of the written contract as between those parties, but can the parties agree to backdate the contract and bind a third party, Lexington Insurance, who's issued a contract that says, in order for there to be coverage, it's got to be in a written contract, can they then be bound to an after the fact, after the injury, and it was after the injury here, after the injury, backdating of the contract? They could have put in the same phrase that was put in in contractual liability, executed written contract, in the additional insured coverage, could they not? They could have done that, Your Honor, yes. So you want us to imply a term which appears under contractual liability as an exception to the exclusion in the additional insured coverage? Yes, Your Honor. You can't do that if it's ambiguous since you wrote the contract. Your Honor, again, under Palmer v. Truck, you can't read the – which is a California Supreme Court case at 1115 of that case. You don't read the contract terms in isolation. You have to look at the contract as a whole. And you don't have to redefine every term in every place. One of the construction canons which we're told increasingly to use these days is expressio unias. You did mention executed contract in contractual liability as an exception, but you didn't mention executed contract under written contract. Isn't that one way of reading it? That's one way of looking at it, Your Honor, although the more traditional way, I think, of using that expressio unias rule is where there are a list of things and you express one or two or three but don't express four and five, and so it only applies to one or two or three. It doesn't apply to the things that were omitted. But here we're using one term. For example, the term bodily injury occurs throughout the policy. It is defined in the policy. It is not every time the policy mentions bodily injury, it doesn't say bodily injury resulting – physical injury resulting from an occurrence. In other words, it doesn't add the whole definition in, having been defined once it is defined. Now, again, in a perfect world, putting in written contract executed before would have been a better thing, but I don't think that removes the requirement. And to interpret it as removing the requirement, I think, would interpret the policy in a way that is inconsistent with the intent and meaning of that requirement, that there be a written contract that is there. Let me ask you this. I take your point that the contract that is executed after the date of the accident probably isn't covered by this. Right. So my question then is why isn't the letter of intent a written contract with respect to the insurance, not with respect to putting in sprinklers, but with respect to agreement to provide insurance? And I ask that because this letter dated August 10, 2006, it looks like, specifically says they are to provide the following documents, general liability naming, BBI as an additional insured. They're supposed to provide these as soon as possible. That's signed by the guy from BBI, and then countersigned, signed below a return copy indicates your acceptance, and it's signed by the other side. It looks like there's an offer and acceptance and a deal not to put in sprinklers, but to provide this kind of insurance. And the insurance was, in fact, provided ultimately, Your Honor, but the insurance itself requires that the written contract be signed before. Well, a contract for what? I mean, it doesn't say contract for sprinklers. It has to be a written contract under which they agree to do this, agree to provide an additional insured endorsement. And it looks like there was a promise made that they would do this back on August 10, signed by both sides. Yes, Your Honor. But, again, I think that's that they will, not that they had, and that the additional insured endorsement that was, in fact, applied, applied to the written contract. They're talking about the subcontract at that point. Well, maybe, maybe not. I mean, if this is a contract to provide the insurance to undertake that obligation, then that's the end of the ballgame, isn't it? Again, Your Honor, I think that the letter of intent is an intent to enter into and what will be, which is what Judge Seaborg pointed out in the hearing below, not what is at that point. Okay. All right. Unless the Court, I don't want to leave 36 seconds left. There is a collateral estoppel issue that is also here. The only thing I, quickly, the initial action by BBI against RCM included not just the negligence and indemnity, but also the breach of the promise to provide insurance. That complaint was dismissed with prejudice, and that is, that dismissal bars this claim of equitable subrogation, which is what American Guarantee contends this is, because they stand in the shoes of the insured at this point, and they're insured having dismissed the claim. Under what procedure was it dismissed with prejudice? I'm sorry, was that Your Honor? Under what procedure was it dismissed with prejudice? It was just a straight dismissal with waiver of cost. The dismissal was filed with the clerk's office. I believe it's page 95 of the record, 91, 92, or 95. It was a voluntary dismissal. Voluntary dismissal, yes. But it was a complete dismissal of that cause of action. Got you. Thank you very much. Thank you, Your Honor. Ms. Piero, back to you. He's taller than I am. Your Honor, I want to start with the question about arising out of and the difference between American Dynasty and the other cases, particularly Sciufi. Mr. Bonino pointed out that there was some differences in language in the additional insured endorsements. In Sciufi, what was at issue was a general form called the CG 2010-1185. It's commonly used as an additional insured endorsement. That endorsement states that a person is an insured for liability arising out of your work for that insured by or for you. The difference here is not in the phrase for that insured that you are working, that the named insured is working for the additional insured. The difference is between your work and operations. The word operations, I would contend, is no different from work and that the distinction to the extent it was being made in American Dynasty should not be carried forward because there simply isn't a distinction that is relevant. Beyond that, what American Dynasty held was in looking at the phrase ongoing operations, to the extent that it was ambiguous, American Dynasty was going to look to the indemnity provision in the contract to give it some meaning. In looking to the indemnity provision, it focused on the phrase arising out of the acts or omissions of the subcontractor. And it read that to be the higher standard than the standard being put forth in Sciufi. Would your position in this case be different if the accident, instead of occurring from something falling off the roof, had occurred as a result of the general contractor's truck hitting? Running him over? Yeah, running him over. No. The case law has said that even where the general contractor or the additional insured is solely negligent, as he was in Sciufi, there is still AI coverage. In Sciufi, there was no possible way of saying that the air conditioning subcontractor had anything to do with the faulty hatch. It's no different here, where the general contractor's negligence may have created the injury in whatever form that might have happened. To go back to the ---- Could you tell me, just in 25 words or less, what's the significance of the letter of intent? What's the significance of the letter of intent? It's a contract. I think it's a contract certainly with respect to the fact that RCM was agreeing to provide additional insured coverage to BDI with the contingency that if RCM worked on this project, BDI would then have that coverage. In fact, RCM did work on the project, so RCM was required to provide that coverage. Okay. It was a contract, at least to the point at which it gets integrated. The subcontract then becomes the governing document at the point it becomes effective. But to the extent that was not effective, I believe it was effective from the date of November 2nd. If it were not, there would still be the letter of intent governing the access. In the letter of intent superseded by a document, is there some paragraph in the subcontract which says all prior representations and negotiations, et cetera, are overcome by an integration contract? Exactly. Well, there goes the letter of intent, right? Yes. But both contracts have the same provision. Both required additional insured coverage. So when one passed away and the other came into being is irrelevant because on November 8th, the date of the accident, one of the two of them applied and both of them required additional insured coverage for BBI. So Lexington was bound. Thank you, Ms. Fioro. Ms. Menino, thank you two very much. The case is submitted.
judges: Schroeder, Silverman, Bea